Good morning. May it please the Court. I am Special Assistant Attorney General Stephen H. Aden for the defendants, and with me is the Solicitor General of Arizona, Mr. Elman, Robert Elman, and my colleague, Ms. Catherine Foster. The Supreme Court has repeatedly admonished courts not to find state measures preempted in the absence of clear evidence that Congress so intended. The District Court erred in this case by holding that the Medicaid statute's free choice of qualified provider provision preempts Arizona's explicit authority under the Act to define what qualified means for any reason state law supplies. The Medicaid program guarantees to the state's Excuse me. Where's the explicit authority? I'm sorry, Your Honor? Where is the explicit authority? Your Honor, it's found in two particular places. It's found in the Regulation 431.50. That's not the statute. It's a regulation. Okay. You're asking where the You said it was in the statute. I want to know where it is in the statute. I'm sorry, Your Honor. I'm having trouble hearing. You said it was in the statute. I want to know where it is in the statute. Your Honor, in the statute, it's at 42 U.S. Code Section 1396AP1, which says, And those reasons are all the cross-reference is all to a financial responsibility for all kinds of reasons, right? Yes, Your Honor. That has to do That's the provision that was added in 1987. Right. So I still want to know where there's where the old You're saying there's some kind of provision that was added in 1987.  somewhere in the statute there's an override of this rule that says that particularly with regard to family planning, the recipients or beneficiaries can have any qualified person. Yes. Where is this override? Well, Your Honor, it is true that with respect to family planning, the statute preserves the right to choose freely among qualified providers. People who are qualified to choose freely among qualified providers. That's a different issue. It's not just qualified. It's qualified in a context. That doesn't do anything to define the term qualified provider, which is a salient question here. That's a different issue. But you began by suggesting there was somewhere I thought you were suggesting that quite aside from that provision, there is somewhere in the statute a specific permission to declare anybody you want as able or not able to provide Medicaid services. Yes, Your Honor. I apologize. I'm not being clear enough. What the statute does is it explicitly reserves the State's authority both to qualify providers for any reason under State, well, reasonable qualifications is what the regulation 431.51 says, impose reasonable qualifications for providers, and the statute at 1396 AP1 says that the State has not only the Federal Secretary's authority to exclude for reasons generally related to fraud and criminal conduct, but also its own authority. Right. Whatever that authority is. But it doesn't define it in that statute. And the other statute does, i.e., to set qualifications related to the ability to provide services. Well, Your Honor, I think that the term related to the ability to provide services is just a gloss on what the statute is getting at and the regulatory framework it's getting at. In a spending clause framework, as the Court well knows, and as the Court held in Guzman v. Shurey, the first question is, is there an explicit override of State inherent authority in the statute? There is none here, as the Court in Guzman noted. Then you move on to ask, can the Federal authority and the And in this case, when you look at the term in 1396AA23 relating to free choice of qualified provider, the problem with the position that the plaintiffs have taken in this case and that Judge Wake held, and frankly, in addition, the problem with the interpretation by the Seventh Circuit is that And by the Secretary. Yes. I'm sorry, Your Honor. And by the Secretary. And the And by the Secretary. Thank you. And the final decision by CMS. The problem is that it regards the definition of qualified as binary. According to the Seventh Circuit and CMS, it either has to mean that qualified has to be defined by the statute, which it is not, or it has to be a lay definition from the dictionary, which it should not be. The definition of qualified, according to the statutory framework and the to impose reasonable qualifications. The only serious question left is, is HB2800 a reasonable qualification on providers? And the State maintains that it is. What's rational about it? What's reasonable about it? Well, Your Honor, it's rational and reasonable for a couple of reasons. The State of Arizona has a long-standing policy against subsidizing the provision of elective abortion. Well, maybe you can't. I mean, not only could you make it a criteria that there not be subsidizing abortions, but in fact, my understanding is that that's inherent in the Federal requirement, and if somebody, if you could demonstrate that in fact you were subsidizing abortions, then that would be a problem. But that's not the ground here. Well, Your Honor, that is correct. The Hyde Amendment in the Medicaid statute, the rider to the Medicaid Appropriations Act, prohibits the use of Federal funds for elective abortions. And the way this is set up, even if there were absolutely no cross-fertilization at all, or cross, to use a pun, or any subsidization, you'd still disqualify them. Well, Your Honor, the record in this case is at best equivocal on that question. The State's expert opined that there's actually direct subsidization going on here. But that isn't the question, because you're, you're, that isn't the ground on which you disqualify them. That is the ground upon which HB 2800 qualifies providers if they refrain from elective abortion because the State desires to refrain from subsidizing, whether it's indirectly or indirectly. But it's not based on subsidization. It's not what, Your Honor? It is not part of the criteria that there be cross-subsidization. It's not in the statute. It's not what you're excluding them for. You don't have to prove it up in order to do it on this, under this statute. I'm sorry, Your Honor. It's not in 2800, the requirement for cross-subsidization? Yes. No. The, the State, in our view, had the prerogative, the authority to refrain from even indirectly subsidizing elective abortion providers. And when State and Federal funds flow into the, the coffers of elective abortion providers, even if they claim that it's not, that the Medicaid family planning benefit is not fully compensating them at their cost, there are a couple of problems with that. Number one, as the CEO of Planned Parenthood testified in deposition, there is no separate account. It all flows into one account. It all goes. But, but, this is my point. Nothing in the statute requires you to prove any of that. You only, you can simply, under this statute that you're supporting the validity of, all you have to demonstrate is that they also provide abortions, period, the end. That's, that's correct, Your Honor. And again, we believe it is within the State's prerogative to presume that when a provider of elective abortions is also receiving Medicaid funding, that that Medicaid funding goes to subsidize the provision of elective abortions in some form. And again, the record in this case bears that out. Even if the record is equivocal, the State should receive deference in crafting its legislation to respond to perceived problems and in furtherance of important State policy, such as refraining from subsidizing elective abortion. Are there any limitations in, in, in A23 on what the State can determine the word qualified means? Your Honor, the only limitation to my knowledge is not in the statute itself, but rather in the regulation at 431.51, which uses the term reasonable qualifications. Okay. Let's, let's suppose, let's suppose that Arizona was lobbied by, by the doctors to get rid of osteopaths. So we're going to get rid of all the DOs, even if they're board certified DOs. Can Arizona do that? Could Arizona exclude osteopaths? Yeah. What, what burden does Arizona have to assume in order to be able to sustain that as a qualification? I, I think that the State has broad authority, Your Honor. So the State could ban all osteopaths in Arizona from, from receiving, from being qualified to receive Medicare refunds? Unless there is a specific provision in the Medicaid Act that speaks to the contrary, and I apologize, I'm not aware of any provision like that. Okay. What if the requirement was that only people affiliated with university hospitals can provide, that only people qualified, affiliated with university hospitals can provide Medicaid services? In, in the case of university hospitals, Your Honor, they are excluded from the operation of 2800. Hospitals are excluded under the statute. No, doctors who have, who have privileges at university hospitals and not doctors who don't have privileges at university hospitals. Oh, I'm sorry. I, I get your question. I think that the question would then become whether that is a reasonable qualification under the statute. And to my mind, reasonable means. But why doesn't the statute say what the standard is, which is whether they are services, meaning essentially licensed. And then there's another set of, of valid provisions having to do with financial responsibility and so on, which is the other statute that you were referencing, and people who have felony convictions and so on. But if it's, doesn't have to do with responsibility or financial responsibility and it doesn't have to do with their authority to provide these services in general in the state. In other words, Planned Parenthood could provide these services to people who aren't covered by Medicaid. The university hospital, the people who aren't affiliated with university hospitals can provide services to other people in the state. Osteopaths can provide these services to other people in the state. Isn't the whole point of this a leveling essentially? That as long as you're qualified to provide the services in the state to patients in general, then people covered by Medicaid should be able to use your services. Isn't that what this is saying? Your Honor, I don't believe so for a couple of reasons. First, because the exclusionary statute, 1396AP1, allows states to exclude providers for any reason under state law. Any reason means any reason. What says that? 1396AP1. No, it doesn't say that. Yes. The regulation says something like that in a context. I stand corrected. The statute does not say it. Your Honor, the statute reserves state authority to exclude providers under the regulation for any reason. The Senate affirmed that in the legislative history. Which secretary could exclude them? The secretary's reasons, Your Honor, relate to fraud and Could the secretary exclude all osteopaths? Again, unless there is a provision to the contrary, I believe the secretary could hypothetically conclude that osteopaths don't further the purposes of the Medicaid statute. What kind of proof, what kind of, if there was a challenge to that, as there surely would be from the osteopaths. Yes. What version would the secretary assume in order to be able to sustain that kind of a regulation? The question then would be, for the court reviewing that rule, whether it's a reasonable qualification based on the purposes of the Medicaid statute. That might be a judgment. If that's true, what is left of this provision that is? What's left of it, Your Honor, is that the States have authority to set reasonable provider qualifications and to, in consonance with that, exclude providers on a basis that is generally reasonable under the Medicaid statute. Even if these providers are out there providing services to everybody else in the State who's paying them? Isn't the whole point of this to say that people who are having Medicaid or getting Medicaid are supposed to have the same freedom of choice as other people? Your Honor, the State's position is that the free choice of qualified provider provision should be read in concert with the provision at 1396AA30A, which requires States, and I will quote from that, it requires States to assure that payments are sufficient to enlist enough providers so that care and services are available under the plan, at least to the extent that such care and services are available to the general population of the geographic area. That has to do with the rate, right? With what? The rate. The rates of payment. It has to do with the rates, but it mandates that the rates must be sufficient. The payment must be enough to attract to the Medicaid market enough providers to reflect the private insurance market. Okay. That's one provision, but there's another provision. And there's another? The provision which is the qualified provider provision, the so-called free choice. Yes, the free choice. Well, we're saying that those two provisions should be read together. When you're trying to define the word. Then why have two of them? Pardon? Then why have two of them? Then why have two of them? Well, they do relate to two different purposes. 30A, obviously, as you said, relates to the sufficiency of the rates that must be enough to create a market for Medicaid services that mirrors the private insurance market. And 823A is the free choice of qualified provider provision that ensures that folks have a range of choices that basically reflects the private insurance market. And they have that here. There are over 2,000 providers in Arizona of family planning Medicaid services. There is no real threat to patients' right to choose among a range of qualified providers. Suppose the State were to say that with regard to obstetric services. Well, I guess that's covered by the family planning. With regard to family planning services, that although nurse practitioners can provide family planning services in the State of Arizona, Medicaid recipients can't use nurse practitioners. That's okay? Your Honor, I think that might be a different case. If the medical profession itself in Arizona determined that nurse practitioners were eligible. But that's the whole issue of everything here. Every provider that Planned Parenthood is providing is qualified in the sense of allowed to provide the services. Right. Not in the lay sense. In the sense of allowed by the State of Arizona to provide these services to the populace at large. But, Your Honor, if you use the dictionary definition that the Seventh Circuit and CMS used, then the State's authority is no greater than the Federal Secretary's authority. All the State does is determine that you're ready, willing and able to provide the services and stamp the qualification. In fact, it's the State that's deciding who's qualified in that sense. Because licensing is all the business of the State, not the Federal Government. It must be more than licensing because the statute doesn't use the term licensed. It uses the term qualified, ready, willing and able to provide services. Right. But that's a general term so that Arizona hasn't disqualified the providers at Planned Parenthood from practicing medicine in Arizona. They are generally qualified to practice medicine in Arizona. You've got a gatekeeping function kind of similar to passing the bar in which you will certify who is qualified to practice medicine. Right. Your Honor, the term qualified, I believe, must mean more than simply ready, willing, able to provide services because the statute itself reserves State authority to exclude providers for any reason or rather. I'm sorry. Let's do it again. Where does it say that? It doesn't. I misspoke. The regulation, Your Honor, and the – well, the regulation specifically says that in keeping with the statute, which expressly reserves authority. Which has been interpreted by the entity that wrote it not to mean what you're saying it means. Interpreted by CMS? Yes. Your Honor, yes. But I don't – Chevron deference is off the table. There is no Chevron question here now that CMS has given a final decision in which it merely construes the statute. It has not applied its own expertise to interstitial areas in the statute. It has simply construed the legal meaning. But it has with regard to the regulation, arguably. It has with regard to the regulation? Yes. No, it simply – it simply has construed the statute, I believe, Your Honor. I'm sorry. There is a whole discussion in that opinion of the – of that regulation, the one that you keep misquoting. Misquoting it because you're saying it's a statute, but it's not, it's a regulation. Well, Your Honor, it is the State's position that Chevron deference is not relevant here because both CMS – because CMS has merely provided its own legal construction on the pertinent terms in the statutory framework. That's true all – very frequently. Well, Your Honor, Chevron calls – Chevron deference to the opinion applies when there is – applies to regulations and to our and so on. And here we have a regulation and the State has told us what it thinks it means. Yes. Point taken, Your Honor. Again, we do – we disagree with the Secretary's interpretation of the free choice of qualified provider provision. And its interpretation of the regulations and the rest of the statutory framework follows from that interpretation that it's a dictionary definition of qualified. But our point remains that if it is a dictionary definition of qualified, that binds the hands of the State to impose reasonable qualifications on providers and it strips it of the authority the statute gives to exclude providers using its own authority in addition to the Secretary's authority. If the State only has the – You're about out of time. Yes. Thank you, Your Honor. I will reserve the rest of my time. Okay. And we'll give you a couple minutes. Thank you. Thank you. Good afternoon, Your Honors. Alice Klapman arguing on behalf of Plaintiff Appellees. As this Court has recognized in its questioning, the theory defendants have offered of their own authority to exclude providers or set provider qualifications is a limitless theory. There is simply no line to draw, and their theory would read out of existence the free choice provision as well as whole swaths of the Medicaid Act that carve out specific grounds for States to exclude providers. As this Court also has recognized today, despite defendants' best efforts, the term qualified in the statute in the free choice provision does have a specific meaning. It is qualified to provide the service or services required. There's nothing vague about that provision, and it's clear both from the provision itself and from the legislative history that what Congress had in mind was providers who, and here I'm quoting from the Senate report, set certain standards. Okay. Sorry. What Congress had in mind when it referred to qualified providers was providers who are competent, who are professionally qualified, and the authority it was recognizing that States have is the authority, and here I quote from the Senate report, to set certain standards for the provision of care. That language, of course, mirrors the language of the HHS regulation implementing the free choice provision. What is that language? The language of the regulation, Your Honor, is 431.51c2, and the regulation allows States to establish, quote, relating to the qualifications of providers. Again, reinforcing the view expressed here today that Congress was referring only to professional qualifications, not to some free-floating State authority to pick and choose which providers could participate. But there are also qualifications with regard, or are there, with regard to various responsibility sorts of considerations, i.e., lack of criminal records, or it's possible that they could set such qualifications, or is it? And financial responsibility, people who have, don't keep records or whatever, or have in the past engaged in fraud, are they, can they be declared not qualified? I understand you say that there's a difference between qualified and excluded, and I don't know whether that matters. Right. Well, I think that would be a reasonable construction of the term qualified, and it certainly wouldn't save the defendants here. I do think on a straightforward reading of the statute, qualified means standard of care, and there are separate provisions of the Medicaid Act that enable, subsection P1, which we've just discussed, that enable States to individually disqualify providers for reasons of fraud or abuse. But it wouldn't, I mean, there wouldn't seem to be a major difference between if you engage in fraud, we're going to exclude you, and what if the qualifications is not engaging in fraud, because if you do, we're going to exclude you. I agree, Your Honor. Yes. I do think that contrary to what defendants have suggested here today, the Court should not read the two provisions as coextensive, because they're structurally different, and the State's authority to exclude providers under subsection P1 for fraud and abuse is the authority to do so on a case-by-case basis with procedural protections, which is very different from the authority under the free choice provision to set general qualifications. But I would agree with Your Honor that it doesn't stretch the concept of a qualification to include a concept of honesty or integrity. Going back to this concept of qualification as professionally qualified to provide the services required, there is no question, and the defendants haven't even alleged, that the providers in this case, Planned Parenthood Arizona, and individual provider, Dr. Eric Royce, are qualified under any ordinary sense of the term, and under the sense of the term used in the statute. They have both been providing Medicaid services for decades in Arizona. Does the statute as written, the Arizona statute, apply outside the family planning field? So if, for example, the individual doctor, plaintiff, delivers babies, under this provision he couldn't get paid for delivering babies, is that right? I believe that's the case, Your Honor. And if he's a general practitioner who also deals with, you know, flu or broken legs, he couldn't do that either? I believe that's the case, Your Honor. Okay. And finally, I just want to touch on the issue of Chevron deference. This Court, so as the Court is aware, HHS has issued a final decision after a full adjudicatory process, disapproving of Indiana's plan to exclude abortion providers, a plan identical to Arizona's. Under the clear precedent of this circuit, as well as of at least six other circuits, that decision is entitled to Chevron deference. Thus, if there were any ambiguity in the statute, any question about whether Arizona could do what it's doing here, and there is not, that ambiguity would be resolved in our favor by HHS's decision in the Indiana case. What about this regulation that says that the state can exclude people for any other reason? That is discussed in the CMS. It is, Your Honor. And what CMS explains is that there's any other authority. So the language is the language of subsection P1, which I believe Your Honor is referring to. I'm talking about the regulation now. I understand the P1 is very, it doesn't say hardly anything. But what about the regulation? Okay. I believe the regulation does nothing more than track the language of P1. Recognizing that this is the case. Well, the first sentence does, but isn't there a second sentence? I apologize, Your Honor. I don't have the language in front of me. I'm sorry, Your Honor. Let's see. Actually, it's the sentence he kept reading about nothing in this part precludes the state from excluding providers, not providers, it doesn't use the word providers, but somebody for any other reason. Right. My understanding of that regulation, Your Honor, is that it is simply tracking the language of P1 that says in addition to any other authority, states have authority that is parallel to HHS's authority. And that is simply recognizing the traditional state role that has existed for decades. The traditional state role in investigating and prosecuting fraud and abuse by providers. Nothing more than that. Unless there are any further questions, to conclude, the free choice provision is enforceable and it prohibits measures such as Arizona's that attempt to restrict patient choice for reasons that have no relationship to a provider's professional fitness to provide the services needed. Plaintiffs respectfully ask this court to uphold the decisions below and preserve the rights of thousands of Arizona Medicaid beneficiaries to seek care from the provider they know and trust. Thank you. Thank you very much. Give me two minutes in rebuttal, which is generous. Thank you very much. I'd like to respond further to Judge Bybee's question regarding the exclusion of certain classes of providers. Interestingly, there were a series of cases involving podiatrists who claimed that they had been excluded from eligibility for Medicaid in some way or form. Not totally, but there had been certain services that they could not be compensated for. So there were lawsuits that ensued. One of these was Silver v. Baggiano, and the appeals court in Silver v. Baggiano was interested in the issue whether AA23 provides a right of action but sent the case back down to determine if the provider itself had a right of action. So I just mention that because there have been exclusions in the Medicaid statute for classes of providers or for services performed by classes of providers, and there has been litigation over that, and I just wanted to note that. It sounds like that went, though, to the heart of the matter as to what a podiatrist is capable of doing. I know of other cases in which there are questions as to how far up the ankle  and they're no longer a foot doctor. And again, I believe that substantial deference should be given to a state in determining whether and to what extent the services of a... But that would be different if Arizona said, look, if you're a podiatrist, you can't treat knee problems because a knee clearly is not a foot and you're not qualified to treat feet. And we expect that HHS might respect that kind of limitation. But that goes to disqualifying the podiatrist from treating anybody, no matter who they're being compensated by. It goes to the qualifications of podiatrists as knee doctors. Well, once again... This doesn't have anything dealing with the qualifications of Planned Parenthood's doctors to perform these kinds of services. But, Your Honor, with all due respect, you're using the term qualification in a lay sense once again. We maintain that it doesn't mean ready, willing, and able to provide services because the State would have no real authority beyond what this... No, your definition of qualification is it's anything that the State darn well pleases. It's whatever the State says. Which is reasonable. I'm sorry, Your Honor. Which is also reasonable. And we maintain that refraining from subsidizing elective abortions is very reasonable and is a public policy that the Supreme Court itself has affirmed. Finally, I would note that other cases have, including the Second Circus decision in Plaza Health Laboratories, have recognized that exclusions can be for reasons not directly related to ready, willing, and able to provide services. In that case, the provider was excluded for industrial pollution. That's more... That's further from the beam than what Arizona has done here, I would submit. And also the statute itself allows the Secretary to exclude providers for failing to pay back student loans. How does that relate to ready, willing, and able to provide services? Because the statute says so. So it isn't covered by that provision. It's covered by a different provision. The statute says so, Your Honor, because any Federal authority in a spending clause statute has to be explicit. The States have reserved authority when their authority is not derogated by the terms of the statute. That's the difference here. That's why it says in 1396A.P.1, in addition to any other authority, it's a recognition that under the Federalism system, the States have retained authority, inherent authority, to set the provider qualifications that they deem reasonable. And that is all that we're saying here. So we are out of your second set of times. So thank you. Thank you, Your Honor, very much. Well, thank you very much for your argument in this interesting case. And the case of Planned Parenthood of Arizona v. Spetlak is submitted. Thank you. And we are in recess.
judges: Marshall, Berzon, Bybee